UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., SUCCESSOR TO LASALLE BANK NATIONAL ASSOC., ) ) ) | Case No. 09 C 5108 |
| Plaintiff/Counterdefendant, ) | |
| ) | Judge David Coar |
| v. ) | |
| ) | Magistrate Judge Geraldine Soat Brown |
| FIRST MUTUAL BANCORP OF ILLINOIS, PETHINAIDU VELCUHAMY, ) ) ) ) | |
| Defendants/Counterplaintiffs. ) | |
| BANK OF AMERICA, N.A., SUCCESSOR TO LASALLE BANK NATIONAL ASSOC., ) ) ) | Case No. 09 C 5109 |
| ) | Judge David Coar |
| Plaintiff/Counterdefendant, ) | |
| ) | Magistrate Judge Geraldine Soat Brown |
| v. ) | |
| PETHINAIDU VELUCHAMY and PARAMESWARI VELUCHAMY, ) ) ) | |
| Defendants/Counterplaintiffs. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bank of America ("BOA") filed two actions (09 C 5108 and 09 C 5109) seeking to collect unpaid amounts on loans BOA made either to Pethinaidu Veluchamy and Parameswari Veluchamy ("the Veluchamys") or to First Mutual Bancorp of Illinois ("FMBI") and personally

guaranteed by Mr. Veluchamy. [09 C 5108, dkt 1; 09 C 5109 dkt 1.][1] Following the assertion of the Fifth Amendment privilege by the Veluchamys and FMBI's officers and directors, and the taking of FMBI's Rule 30(b)(6) deposition, BOA filed the present Motion for Discovery Sanctions, a Protective Order, and Other Relief. (BOA's Mot. [dkt128]; BOA's Mem. [dkt 130].) FMBI and the Veluchamys (collectively, "counterplaintiffs") have responded in opposition [dkt 140], and BOA has filed a reply. [Dkt 142.] Upon this court's order, counterplaintiffs also filed a statement as to why they should be allowed to take additional discovery (Counterpls.' Disc. Stmt. [dkt 145]), and BOA has responded in opposition to that statement. (BOA's Resp. to Disc. Stmt. [dkt 146].) BOA's motion was granted in part and denied in part. [Dkt 148.] This opinion sets out the basis for that ruling.

**BACKGROUND**

1. <u>Factual background</u>

In August 2009, BOA filed two complaints: one alleging that BOA was due money on unpaid loans it had made to FMBI that had been personally guaranteed by Mr. Veluchamy, the other alleging that BOA was due money on unpaid loans it had made to the Veluchamys for which the Veluchamys are jointly and severally liable. (09 C 5108 Compl.; 09 C 5109 Compl.) Given the related nature of the cases, they have proceeded together. [Dkt 21.]

In response to each complaint, counterplaintiffs admit their indebtedness on the loans but assert a number of affirmative defenses and counterclaims, alleging basically fraud and breach of fiduciary duty. (09 C 5108 Ans. and Counterclaims [dkt 13]; 09 C 5109 Ans. and Counterclaims

---

[1] Unless otherwise noted, docket references herein are to the docket in 09 C 5108.

[dkt 14].) In essence, counterplaintiffs allege that BOA is not entitled to collect on the loans because the loan proceeds were misused or misappropriated by others, including a former director of FMBI, that BOA knew about the misuse and breach of fiduciary duty, but that BOA nevertheless had allowed FMBI to continue to borrow and had encouraged the Veluchamys to guarantee the debt personally. Counterplaintiffs allege, *inter alia*, that they reasonably relied on BOA to obtain and communicate information, and that BOA failed to reveal information to the Veluchamys. (*Id*. Counterclaims ¶¶ 30, 36.) Three of the affirmative defenses to BOA's complaints simply incorporate counterplaintiffs' counterclaims. (*Id*. Aff. Defenses at 6-7.)

After the Veluchamys' request for a stay of discovery directed to them was rejected [*see* dkt 53 and 126], the Veluchamys asserted their Fifth Amendment privilege against self-incrimination in response to virtually all of BOA's written and oral discovery. The Veluchamys' son, Arun Veluchamy, likewise asserted the Fifth Amendment privilege in response to virtually all questions presented to him at his deposition, including questions regarding his educational background and whether he had ever been the president of FMBI. (BOA's Mem., Ex. 11, Dep. of Arun Veluchamy at 12-13.)[2]

---

[2] Arun Veluchamy's entire deposition was filed under seal, as were a number of other exhibits in support of and opposition to BOA's motion. The Protective Order entered in this case provides that "Documents containing unredacted Confidential Material shall be filed under seal only in accordance with the Local Rules governing confidential materials." (Order, Feb. 19, 2010 ¶ 9.) [Dkt 85.] Local Rule 26.2(b) provides in part, "No attorney or party may file a restricted document without prior order of court specifying the particular document or portion of a document that may be filed restricted."

No party sought leave to file materials under seal relating to the present motion. It is doubtful that deposition transcripts and discovery responses consisting almost entirely of the assertion of Fifth Amendment privilege should be under seal. If any party believes that any of the materials filed under seal in connection with BOA's motion or related briefing should remain under seal, that party must file a motion no later than July 2, 2010, identifying the specific exhibits and the justification for filing under seal. *Unless such a motion is filed, all of the materials filed under seal will be ordered*

On February 25, 2010, BOA issued a Rule 30(b)(6) notice to FMBI seeking deposition testimony about the factual allegations contained in FMBI's answer, affirmative defenses and counterclaims, and about FMBI's answers to BOA's first set of interrogatories. (BOA's Mem., Ex. 14.) When counterplaintiffs complained that the deposition notice was too broad, BOA provided a list of 18 specific categories it intended to address through the deposition. (*Id.*, Ex. 15.) FMBI continued its objections and filed a motion seeking, among other things, to compel BOA to provide more specificity in the notice. [Dkt 94.] BOA opposed the motion and filed a cross-motion to compel the 30(b)(6) deposition. [Dkt 104.]

At the hearing on the motions, the court found the 30(b)(6) topics relevant to counterplaintiffs' affirmative claims and sufficiently specific. BOA's motion was granted in substantial part, FMBI's objections were overruled and its motion denied, and FMBI was ordered to produce a deponent to testify on its behalf about each of the 18 topics that BOA had identified. (Order, March 17, 2010.) [Dkt 106.] During the hearing, counterplaintiffs stated that Mr. Veluchamy would not serve as the 30(b)(6) deponent, and that they likely would designate Jeffery Horwitz, an attorney who had done work for FMBI, for the deposition. (Counterpls.' Resp., Ex. I, Tr. March 17, 2010 at 17-19.) BOA expressed doubt during the hearing about whether Mr. Horwitz would be able to testify as to all 18 topics. (*Id.* at 10, 19.) The court said "The person designated must testify about information known or reasonably available to the organization," and noted that each of the topics about which BOA sought to obtain testimony related only to counterplaintiffs' affirmative claims. (*Id.* at 14-15, 21.) While acknowledging that it was FMBI's prerogative to select its 30(b)(6) deponents, the court reminded the parties that FMBI would be bound by the testimony given at the deposition, and that

---

*to be unsealed and put on the public record.*

4

if Mr. Horwitz testified that he knew nothing more than what is in the documents, FMBI would be stuck with those limited answers. (*Id*. at 21.)

Counterplaintiffs filed objections to the March 17 order, but the District Judge overruled the objections, stating, "[T]he fact that Bank of America is simply trying to defend against Counterplaintiffs' nine-count counterclaim is especially relevant; it is only fair that First Mutual provide a 30(b)(6) representative capable of testifying about the factual bases of its own claims against Bank of America." (Mem. Op. & Order April 26, 2010 at 11.) [Dkt 127.]

After this court's ruling and while counterplaintiffs' objections were pending, FMBI designated Mr. Horwitz as its sole 30(b)(6) deponent and informed BOA that his testimony would be limited to matters about which he had personal knowledge, information contained in documents he personally sent or received, and information that could be gleaned from Mutual Bank Board of Directors Loan Committee minutes. (BOA's Mem., Ex. 16.) Despite BOA's protestations, counterplaintiffs insisted that Mr. Horwitz had consented to testify only about those limited topics. (*Id*., Ex. 18.)

FMBI's Rule 30(b)(6) deposition was taken on April 16, 2010. (BOA's Mem., Ex. 19, Dep. of Jeffery Horwitz as FMBI's 30(b)(6) Deponent.) According to FMBI, no officer or director could be identified to provide 30(b)(6) testimony on its behalf because they all had asserted the Fifth Amendment privilege against self-incrimination. (Counterpls.' Resp., Ex. F.) Thus, FMBI produced Mr. Horwitz as its only 30(b)(6) deponent. As counterplaintiffs were aware, however, Mr. Horwitz was unable to testify about a number of the topics covered by BOA's notice and was able to testify only about certain limited portions of the remaining noticed topics. (BOA's Mem., Ex. 16.)

To prepare for the deposition, Mr. Horwitz only spoke with counterplaintiffs' counsel and

5

reviewed documents that he testified "purport to be" Mutual Bank's Board of Directors minutes and Loan Committee minutes. (Horwitz Dep. at 7-8, 153-54.) He was unable to authenticate any of the documents. (*Id*. at 11-13, 161-63.) Indeed, Mr. Horwitz made it clear that his testimony was limited to what he could read in meeting minutes or other documents; he could not and did not testify as to whether those documents reported true facts. (*Id*.)

Fact discovery closes in these cases on June 25, 2010. (Order, Dec. 2, 2009.) [Dkt 32.] The parties' attorneys have informed the court that the only remaining fact discovery anticipated by any party relates to the counterclaims. Indeed, in light of the Veluchamys' broad assertion of the Fifth Amendment privilege, BOA does not seek any additional discovery (other than some possible issues regarding documents produced by the FDIC). The counterplaintiffs, however, propose three additional depositions of current and former BOA employees. (Counterpls.' Disc. Stmt. at 1-2.)

2.  BOA's motion

BOA brings its motion under Fed. R. Civ. P. 37(b)(2), which provides, in relevant part:

(A) If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:

    (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii) striking pleadings in whole or in part;

    (iv) staying further proceedings until the order is obeyed;

  (v)  dismissing the action or proceeding in whole or in part;

  (vi)  rendering a default judgment against the disobedient party; or

  (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

* * * * *

 (C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

BOA argues that FMBI's failure to designate and educate someone to testify on its behalf on all 18 identified Rule 30(b)(6) deposition topics is a deliberate violation of the March 17 order. It complains that counterplaintiffs have engaged in a pattern of stonewalling BOA's discovery in this case, with the result that BOA has been unable to obtain the discovery it needs to defend against counterplaintiffs' affirmative claims. (BOA's Mem. at 3-4, 10.) BOA seeks dismissal of those claims, an award of its attorneys' fees and expenses incurred in connection with FMBI's Rule 30(b)(6) deposition and the present motion, and a protective order barring the counterplaintiffs from taking any further discovery related to their affirmative claims. (*Id*. at 8-15.) Counterplaintiffs argue that FMBI complied with the court's order as best as it could, and that any consequences flowing from the Velcuhamys' and other FMBI's officers' and directors' assertion of the Fifth Amendment privilege should be determined by the District Judge in the context of summary judgment, and not in the context of a discovery dispute. (Counterpls.' Resp. at 5, 6-7, 10-12.)

**DISCUSSION**

1.      <u>FMBI's failure to comply with the March 17 order</u>

FMBI was properly served with BOA's Rule 30(b)(6) notice, and counterplaintiffs' objections to the breadth and specificity of the notice were overruled both by this court and by the District Judge. To defend itself against counterplaintiffs' affirmative claims, BOA was entitled to obtain a complete Rule 30(b)(6) deposition of FMBI, and FMBI was ordered to submit to one. FMBI was obligated under both the Federal Rules and the March 17 order to provide deposition testimony about the 18 topics listed by BOA.[3]

Although counterplaintiffs argue against the imposition of sanctions, they do not deny that FMBI failed to comply with the March 17 order. Notably, counterplaintiffs state that "FMBI recognizes that consequences flow from its inability to provide substantive responses to various 30(b)(6) categories and questions." (*Id*. at 2.) Counterplaintiffs seek to minimize those consequences by arguing that FMBI "complied with the March 17 Order as best it could" in light of the fact that Mr. Veluchamy had asserted his Fifth Amendment privilege. (*Id.* at 5.)

A witness who asserts his Fifth Amendment rights cannot be compelled to serve as a Rule 30(b)(6) deponent. *See, e.g., City of Chicago v. Wolf*, No. 91 C 8161, 1993 WL 177020 at *1 (N.D. Ill. May 21, 1993). But FMBI possesses no Fifth Amendment privilege. *Braswell v. United States*,

---

[3] In its effort to avoid sanctions, FMBI suggests that there was some remaining room for dispute about the scope of the 30(b)(6) topics after the March 17 ruling. (Counterpls.' Resp. at 5.) That is not correct. The scope of the 30(b)(6) deposition set out in the 18 topics had been ruled appropriate, and FMBI had no right to narrow it. Although the court suggested that counsel for the parties communicate following the March 17 ruling about identifying appropriate witnesses and to discuss possible stipulations that might obviate the need for certain testimony, FMBI was ordered to provide testimony about each of the specified topics. (Tr. Mar. 17, 2010 at 17, 23-27.)

487 U.S. 99, 105, 108-09 (1988). Corporations can be compelled to answer the questions through an agent who will not invoke the privilege. *United States v. Kordel*, 397 U.S. 1, 8 (1970); *Wolf*, 1993 WL 177020 at *1. "Normally when a corporate official acting as such invokes his fifth amendment privilege, the corporation is required to designate another agent who is capable of furnishing the information without incriminating himself." *Worthington Pump Corp. v. Hoffert Marine, Inc.*, No. A 79-3531, 1982 WL 308871 at *2, 3 (D.N.J. Feb. 19, 1982) (imposing sanctions on corporation for discovery failures following officers' assertion of Fifth Amendment privilege); *see also In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. 364, 368, 369 (M.D. Pa. 1979) (barring corporate defendants from introducing certain evidence as sanction for their failure to respond to plaintiffs' discovery requests where failure stemmed from officers' assertion of Fifth Amendment privilege).

Counterplaintiffs emphasize that they asked Mr. Horwitz to testify about all 18 topics, but that he only consented to testify to a portion of them. (Counterpls.' Resp. at 5.) It was, however, FMBI's obligation, not Mr. Horwitz's, to respond to the 30(b)(6) notice and comply with the March 17 order. While it was FMBI's choice to designate Mr. Horwitz as its Rule 30(b)(6) deponent, once it did so it was obligated to prepare him properly for the deposition with the "information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "The law is well-settled that corporations have an 'affirmative duty' to make available as many persons as necessary to give 'complete, knowledgeable, and binding answers' on the corporation's behalf." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir 2007) (citations omitted); *see also Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995).

FMBI did not prepare Mr. Horwitz to provide meaningful information about the factual bases

for FMBI's counterclaims. Instead, he could testify only from his personal knowledge, information contained in documents he sent or received, and information that could be gleaned from Mutual Bank Board of Directors and Directors Loan Committee notes. In preparation for the deposition, Mr. Horwitz was not shown any loan procedure or presentation memoranda although the loan approval procedure was one of the deposition categories for which he had been designated. (Horwitz Dep. at 54-55, 154-56, 166-73, 179-80.) Mr. Horwitz did not even have sufficient information to authenticate meeting minutes or any documents other than those he personally had sent or received. (*Id.* at 11-13). In effect, FMBI presented Mr. Horwitz as a personal witness, not as a 30(b)(6) witness.

As a 30(b)(6) deposition, Mr. Horwitz's deposition was a waste of time and resources, which FMBI and its counsel plainly anticipated. Although Mr. Horwitz testified about his personal knowledge, that was not the object of the 30(b)(6) notice to FMBI. Contrary to FMBI's suggestion, BOA, the target of the counterclaims, cannot be faulted for going ahead with the deposition in spite of FMBI's unilateral efforts to limit the scope. BOA has the right to try to learn as much as it can about the counterclaims.

FMBI argues that all of the corporate officials with knowledge about its counterclaims have asserted the Fifth Amendment privilege and thus were unable to give Mr. Horwitz any information. (BOA's Mem., Ex. 16.) "[T]his court cannot compel the individual defendants who choose to remain silent to respond to inquiries by the 30(b)(6) deponent." *City of Chicago v. Reliable Truck Parts Co., Inc.*, 768 F. Supp. 642, 646 (N.D. Ill. 1991). Significantly, the corporation being deposed in the *Reliable Truck Parts* case was a defendant, while here BOA sought FMBI's deposition to find out about FMBI's counterclaims. BOA is left with a situation in which claims have been brought

10

against it about which BOA can discover no meaningful information.

FMBI's failure to comply with the March 17, 2010 order was deliberate. It was ordered to produce testimony responsive to the 30(b)(6) notice and it failed to do so. Even though the officers cannot be *compelled* to provide information to the 30(b)(6) deponent, "[t]o the extent [FMBI's] officers are unwilling to provide it with information sought in the 30(b)(6) deposition, [FMBI's] failure to respond to questions seeking such information must be deemed deliberate." *Id.* at 647 n. 8. FMBI's failure to provide discovery resulted from the deliberate choice on the part of the corporate officers not to reveal information belonging to the corporation. *See Worthington Pump Corp.*, 1982 WL 308871 at *3. To hold otherwise would in effect convey a Fifth Amendment privilege upon the corporation that has none. *See In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. at 368.

FMBI is a counterplaintiff in its own right. It has an obligation to provide discovery about its counterclaims, which it continues to prosecute even though it is aware that it cannot provide any testimony or evidence from its own corporate officers and directors to support those claims. It cannot shield itself from sanctions for its failure to comply with discovery obligations and orders as long as it continues to pursue its claims.

While FMBI must face the consequences of violating the March 17 order, it does not necessarily follow that the Veluchamys should also be sanctioned for that conduct. The deposition notice and order were directed to FMBI, and it was FMBI that violated the order. The Veluchamys were not compelled to testify as 30(b)(6) deponents, and they likewise were not compelled to provide information despite their asserted privilege so that another witness could testify. To impose sanctions against the Veluchamys personally based on the facts of which BOA complains would in

effect penalize the Veluchamys for asserting their testimonial privilege.

The question, then, is what sanctions are appropriate against FMBI. Notably, BOA argues that dismissal is appropriate for "two independent reasons: as a sanction for violation of this Court's discovery orders, and because Counterplaintiffs' wholesale refusal on Fifth Amendment grounds to answer all discovery concerning their claims and defenses unfairly interfered with BOA's ability to litigate against those claims and defenses." (BOA's Resp. to Disc. Stmt. at 6.) Although BOA's motion is brought as a motion for discovery sanctions, the dispositive ruling that BOA seeks relies heavily on the substantive effect of counterplaintiffs' assertion of the Fifth Amendment privilege in response to BOA's discovery requests.

BOA argues that, because the Velcuhamys and other FMBI officers and directors will not provide testimony, the counterplaintiffs cannot succeed in their counterclaims. (BOA's Mem. at 12-14; BOA's Reply at 11-15; BOA's Resp. to Disc. Stmt. at 1-3.) That argument has some force. "As a general matter, it may be true that a plaintiff, who initiates a civil action but refuses to present evidence, cannot then prevail on the merits with regard to those issues on which he bears the burden of proof." *Hiley v. United States*, 807 F.2d 623, 628 (7th Cir. 1986). Furthermore, in civil litigation, the invocation of the Fifth Amendment privilege permits a negative inference. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). That negative inference can be imputed to a corporate co-plaintiff where the individuals asserting the privilege are officers of that corporation. *See, e.g., Dimensions Med. Ctr. v. Principal Fin. Gp., Ltd.*, No. 93 C 6264, 1996 WL 494229 at *7 (N.D. Ill. Aug. 21, 1996).

In the cases BOA cites, however, the courts have not ordered dismissal as a discovery sanction in this context. Rather, in those cases the court determined as a substantive matter that claimants

were either unable or not entitled to establish their affirmative claims. *See, e.g., Kisting v. Westchester Fire Ins. Co.*, 416 F.2d 967, 967 (7th Cir. 1969) (affirming summary judgment for defendant on insurance coverage claim where plaintiff failed to comply with policy provisions by refusing to answer questions under oath on the basis of the Fifth Amendment); *Crandall v. Hard Rock Café, Intl. (Chicago) Inc.*, No. 99 C 6094, 2000 WL 782938 at *2-3 (N.D. Ill. June 16, 2000) (granting summary judgment for defendant on emotional distress claim where plaintiff asserted Fifth Amendment privilege and refused to answer questions about drug dependency)*; Dimensions Med. Ctr.,* 1996 WL 494229 at *6, 8 (granting summary judgment for counterdefendant on counterclaims and third-party claim against it where corporate counterplaintiffs' officers invoked their individual Fifth Amendment privilege, and noting that a plaintiff may not "use the privilege both to prosecute his case and protect himself as against self-incrimination"). BOA may be right that FMBI's inability to present any testimony by its officers and directors dooms FMBI's counterclaims, but that is a decision on the substantive merits that is reserved for the District Judge.

When considering whether to order (or recommend) dismissal as a discovery sanction, the court must determine whether the offending behavior is so egregious that dismissal is appropriate even assuming, *arguendo,* that the party's claims are meritorious. While dismissal can be an appropriate sanction when proportionate to the circumstances, it is a "harsh penalty." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009). Recommending dismissal of FMBI's counterclaims as a discovery sanction would result in collateral arguments about whether such a sanction is proportionate to FMBI's violation of the order, without relieving BOA or the District Judge of having to address the Veluchamys' personal counterclaims, which parallel FMBI's.

In many cases, the imposition of less severe sanctions, such as the award of attorney's

fees, may be "sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the case, and vindicating the integrity of the court."

*Hal Commodity Cycles Mgt. Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987) (quoting *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1209 (7th Cir. 1984)).

The court concludes that FMBI's violation of the March 17 order justifies sanctions under Rule 37(b)(2), but declines to recommend dismissal of FMBI's counterclaims and related affirmative defenses as the sanction. Because FMBI violated its discovery obligations and the March 17 order, BOA incurred attorneys' time and expenses in: (1) resisting FMBI's efforts to limit the scope of the 30(b)(6) deposition after the March 17 ruling; (2) taking the purported 30(b)(6) deposition that yielded nothing beyond the deponent's personal testimony and what could be obtained from reading the documents alone; and (3) bringing the present motion, with the related briefing, including the statement required by the court's order of June 3, 2010 [dkt 143]. Accordingly, FMBI is ordered to pay the reasonable attorneys' time and expenses BOA incurred for those tasks. The parties shall follow the procedure set out in Northern District of Illinois Local Rule 54.3(d) and (e) to determine the amount to be paid by FMBI to BOA. If no agreement can be reached, BOA may file a motion pursuant to Local Rule 54.3(f) or (g).

2.     BOA's motion for protective order

In light of the events described above, BOA also argues that it is unfair for counterplaintiffs to continue to pursue discovery in support of their counterclaims while BOA is prevented from obtaining any meaningful discovery to defend against the counterclaims. (BOA's Mem. at 14-15; BOA's Resp. to Disc. Stmt. at 2-3.) Without any of their own testimony, BOA asserts,

counterplaintiffs will be unable to prevail on their affirmative claims, and thus BOA is entitled to a protective order precluding counterplaintiffs from taking any further discovery. (BOA's Mem. at 14-15.) That would protect BOA from further time and expense relating to those claims.

Counterplaintiffs state that the issue on their counterclaims is "whether BofA knew what the Veluchamys did not . . . ." (Counterpls.' Resp. at 3.) They acknowledge that "by asserting their Fifth Amendment rights, [the Veluchamys] will be unable to provide testimony in support of their claims, thus making it more difficult to prove them." (*Id*.) They nevertheless resist a protective order, arguing that they should not be prevented from seeking discovery from other sources in support of their affirmative claims. (*Id*. at 14.)

As discussed above, one prong of BOA's argument – the unfairness of being required to respond to discovery when counterplaintiffs refuse to provide any discovery – is an argument going to whether counterplaintiffs should be allowed to prosecute their counterclaims as a substantive matter. That is an issue for the District Judge. The referral to this court is for discovery supervision, which includes the authority to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c).

Questioning whether the counterplaintiffs can establish that BOA's knowledge was superior to their own without any testimony by counterplaintiffs, this court ordered counterplaintiffs to file a statement setting forth what specific discovery they seek and how that discovery could serve any legitimate purpose. (Order, June 3, 2010.) Counterplaintiffs responded by stating that the only remaining discovery they seek is the depositions of three current and former BOA employees: Larry Palucki, Nelson Albrecht and Jeff Bowden. (Counterpls.' Disc. Stmt. at 1-2.) They assert that each

witness can testify "that (a) BofA was aware of problems at Mutual Bank; and (b) BofA was aware that it had a better understanding of these problems than did the Veluchamys." (*Id.* at 2.) Counterplaintiffs' argument relies on the belief that they can prove their claims based on evidence obtained from BOA without any of their own testimony. (*Id.*)

As BOA correctly notes, there are several problems with counterplaintiffs' analysis. (BOA's Resp. to Disc. Stmt. at 1-3.) First, counterplaintiffs have not explained *how* they can prove that BOA's knowledge was superior to their own while refusing to testify. Second, even if counterplaintiffs obtained testimony from a current or former BOA employee that is consistent with their theory of the case (which BOA asserts will not happen), BOA will object that the testimony lacks foundation, that no one other than the Veluchamys could say what the Veluchamys did – or did not – know about their bank.

After carefully considering the parties' submissions, the court remains skeptical that counterplaintiffs can establish their counterclaims of fraud and breach of fiduciary duty without the testimony of any counterplaintiff or any officer or director of FMBI (all of whom have asserted the Fifth Amendment privilege) about the counterplaintiffs' knowledge or reliance. An order precluding further discovery by counterplaintiffs would save BOA and the witnesses from the burden and expenses associated with three more depositions that appear to be little more than fishing. That being said, however, the question remains whether it would be more efficient to allow those depositions to go forward or to cut off further discovery, leaving counterplaintiffs with the argument that, but for the preclusion order, they might have uncovered a damaging admission.

BOA has not argued that the counterplaintiffs seek the depositions for an improper purpose such as harassment or delay, but only that the discovery counterplaintiffs seek cannot alone support

16

their claims. That is a determination best left to the District Judge in the context of a substantive disposition. Because fact discovery will close in two weeks and counterplaintiffs seek only three additional depositions, the better course of action is to allow the depositions to go forward, limited to the topics counterplaintiffs set forth in their Statement, thus moving this case to a resolution on its merits.

## CONCLUSION

For the foregoing reasons, plaintiff/counterdefendant Bank of America's Motion for Discovery Sanctions, a Protective Order, and Other Relief [dkt 128] is granted in part and denied in part, as set out in the order entered on June 11, 2010.

IT IS SO ORDERED.

*Geraldine Soat Brown*

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

June 14, 2010