# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 5108 |
| v. | ) |
| | ) |
| FIRST MUTUAL BANCORP OF ILLINOIS, INC. and PETHINAIDU VELUCHAMY, | ) JUDGE DAVID H. COAR |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Through two consolidated actions, Plaintiff Bank of America seeks to collect overdue loan payments from Pethinaidu and Parameswari Veluchamy and First Mutual Bancorp of Illinois ("First Mutual") (collectively "Defendants"). In response to Bank of America's complaints, Defendants asserted five affirmative defenses and filed virtually identical nine-count counterclaims against Bank of America. On July 1, 2010, this Court dismissed Defendants' counterclaims and rejected all but two of Defendants' affirmative defenses. Plaintiff now moves for summary judgment. For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Pethinaidu and Parameswari Veluchamy, husband and wife, are the majority shareholders of First Mutual Bancorp of Illinois. First Mutual is a holding company for Mutual Bank and owns 100% of Mutual Bank's shares. The Veluchamys and their children, Arun and Anu, are members of First Mutual's board of directors, and Arun Veluchamy is First Mutual's president. All four also served on Mutual Bank's board of directors and loan committee.

- 1 -

Beginning in late 2005, Bank of America loaned the Veluchamys $30 million to provide financing for Mutual Bank. By April 2008, the Veluchamys owed Bank of America $20 million pursuant to a revolving note and $9 million pursuant to a term note. The parties' initial loan agreement, dated December 1, 2005, was amended several times over the years. Under the second amendment to the loan agreement, dated January 31, 2008, the $20 million revolving loan matured and was due November 30, 2008.

In February 2008, Bank of America loaned another $10 million directly to First Mutual. In September 2008, Mr. Veluchamy personally guaranteed this loan in exchange for Bank of America's consent to allow infusion of additional capital into Mutual Bank. Like the Veluchamys' revolving loan, First Mutual's loan was due November 30, 2008.

In September 2008, regulators determined that Mutual Bank was undercapitalized and required the infusion of additional capital. Instead of repaying the loans due November 30, 2008, Defendants requested an extension from Bank of America so that they could inject capital into their floundering bank. As a result, Bank of America and Defendants signed forbearance agreements in May 2009. Under these agreements, Bank of America extended the due date on both the $20 million Veluchamy revolving loan and the $10 million First Mutual loan to June 30, 2009. Bank of America also agreed to forbear from exercising its rights and remedies in the event of a default, including its right to immediately collect default rate interest. In exchange for Bank of America's forbearance, Defendants each explicitly reaffirmed the validity and enforceability of their indebtedness and agreed that, with respect to both the Veluchamy and First Mutual loans:

> [T]here exists no offsets, counterclaims or defenses to payment or performance of the obligations set forth in its Loan Documents and, in consideration hereof, expressly waives any and all such offsets, counterclaims, and defenses arising out of any alleged acts, transactions, or omissions on the part of Bank [of America] arising (or otherwise

relating to the period on or prior to the Amendment effective Date.

(Plaintiff's Rule 56.1 Statement of Material Facts "PSOF" ¶ 33(c)-(d)).[1] Additionally, Mr. Veluchamy, as guarantor for the First Mutual debt, agreed that:

> For the purposes of this Guaranty, Liabilities shall include all obligations of the Company to the Lender arising under or in connection with the Credit Agreement, the Revolving Note, any other Loan Document or any other document or instrument executed in connection therewith, in each case notwithstanding any right or power of the Company or anyone else to assert any claim or defense as to the invalidity or unenforceability of any such obligation, no such claim or defense shall affect or impair the obligations of the undersigned hereunder.

(*Id.* at ¶ 33(e).)

Ultimately, Mutual Bank's financial condition completely deteriorated, the bank was closed by its regulators in July 2009, and Defendants were unable to repay their loans to Bank of America. It is undisputed that Defendants failed to repay the amounts they owed under the $20 million Veluchamy revolving loan and the $10 million First Mutual loan when those loans became due on June 30, 2009. The Veluchamys' failure to repay the amounts due under their $20 million revolving loan constituted a default according to the terms of their loan agreement. By virtue of the default, the Veluchamys' $9 million term loan, which was initially due on November 30, 2010, became due immediately. On August 4, 2009, Bank of America demanded that, by August 14, 2009, Defendants pay in full all amounts owed under the $20 million Veluchamy revolving loan, the $9 million Velcuhamy term loan, and the $10 million First Mutual loan and Veluchamy guaranty. To date, no payments have been made.

On August 19, 2009, Bank of America filed these actions to collect the debts owed by Pethinaidu and Parameswari Veluchamy (*Bank of America v. Pethinaidu Veluchamy and Parameswari Veluchamy*, No. 09 CV 5109) and First Mutual (*Bank of America v. Pethinaidu*

---

[1] Bank of America's motions for summary judgment and the parties' related filings in each of the consolidated actions are identical. Unless otherwise noted, the Court cites to the record in the *First Mutual* case, No. 09-CV-5108.

*Veluchamy and First Mutual*, No. 09 CV 5108). Apparently subscribing to the belief that the best defense is a good offense, Defendants have responded to both of Bank of America's complaints with mirror-image, nine-count counterclaims. Although Defendants admit that they borrowed and failed to repay the funds at issue, Defendants assert that Bank of America engaged in misconduct, and that misconduct extinguishes Defendants' obligation to repay their $39 million debt. Specifically, Defendants blame Mutual Bank's demise on mismanagement by James Regas (attorney, long-time advisor, and chairman of Mutual Bank's board of directors loan committee), and Amrish Mahajan (president of Mutual Bank), who allegedly caused Mutual Bank to make a series of risky and fraudulent loans. Defendants allege that Bank of America knew about Mutual Bank's mismanagement, concealed this information from Defendants, and ultimately facilitated Mutual Bank's downfall by allowing Defendants to take on additional indebtedness despite Mutual Bank's precarious financial situation. Defendants' allegations culminate in five affirmative defenses ((1) Unclean Hands; (2) Fraud; (3) Duress; (4) Estoppel; and (5) Failure to Mitigate) and nine counterclaims ((1) Negligence; (2) Negligent Misrepresentation; (3) Aiding and Abetting Fiduciary Breach; (4) Aiding and Abetting Fraud; (5) Fraud; (6) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (7) Breach of Fiduciary Duty; (8) Breach of Contract; and (9) Unjust Enrichment).

On July 1, 2010, the Court dismissed all nine counterclaims and all but two of Defendants' affirmative defenses: (1) estoppel, and (2) failure to mitigate. The Court held specifically that the rejected counterclaims and defenses were barred by the written releases and waivers included in the parties' forbearance agreements. In reaching this conclusion, the Court rejected Defendants' arguments that their releases were invalid because of fraud, duress, and/or an alleged attorney conflict. Since the parties did not mention Defendants' affirmative defenses

of estoppel or failure to mitigate in connection with Bank of America's motions to dismiss, the Court allowed these defenses to stand but noted that they were weakened by the rejection of Defendants' other defenses and counterclaims.

While Bank of America's motions to dismiss were pending, the parties proceeded to conduct discovery. Despite responding to Bank of America's complaints with nine-count counterclaims and an array of affirmative defenses, Defendants made it very difficult for Bank of America to explore the basis for any of their counterclaims and defenses. Claiming that they were targets of a criminal investigation concerning the downfall of Mutual Bank, Defendants invoked the Fifth Amendment and refused to answer any questions about their counterclaims and defenses.[2] They also failed to produce a competent 30(b)(6) representative on behalf of First Mutual, instead designating one of their attorneys, who was unable to answer virtually any substantive question put to him. For adopting this tack, Magistrate Judge Brown sanctioned First Mutual with a fine of more than $80,000.

Plaintiffs presently move for summary judgment. As of July 22, 2010, shortly before Bank of America filed their motions for summary judgment, the state of affairs was as follows: (1) The unpaid principal of the $20 million Veluchamy revolving loan was $20 million, and the accrued and unpaid interest was $1,563,738.96, with interest continuing to accrue daily in the amount of $3,609.38 (PSOF ¶ 19); (2) The unpaid principal of the $9 million Veluchamy term loan was $9 million, and the accrued and unpaid interest was $703,272.72, with interest continuing to accrue daily in the amount of $1,634.06 (*Id.* at ¶ 20); and (3) The unpaid principal

---

[2] Bank of America's 54-page statement of facts is primarily a collection of questions that Defendants refused to answer. For example, Defendants refused to answer questions about (1) James Regas and Amrish Mahajan; (2) the brokered loans that allegedly caused Mutual Bank's collapse, (3) Defendants' mitigation affirmative defense, including who at Bank of America encouraged Defendants to borrow additional funds and whom they believed knew that loan proceeds were being used to perpetrate a fraud; (4) the releases contained in their forbearance agreements; (5) whether the allegations contained in their counterclaims and affirmative defenses are true or false; and (6) the authenticity of documents such as loan committee minutes and loan presentations. (PSOF ¶¶ 34-44.)

of the $10 million First Mutual loan was $10 million, and the accrued and unpaid interest was $874,644.54, with interest continuing to accrue daily in the amount of $1,816.23 (*Id.* at ¶ 31). With respect to each loan, Defendants agreed that they are liable for the payment of all expenses, costs, fees, and out-of-pocket disbursements (including, without limitation, the legal fees and expenses) incurred by Bank of America to collect the loans, with interest at the default rate.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

It is undisputed that Defendants breached their contractual obligation to repay Bank of America for their loans. In total, Bank of America's outstanding loans amount to $39 million, which includes $29 million borrowed by the Veluchamys, and another $10 million borrowed by First Mutual and personally guaranteed by Mr. Veluchamy. Under the terms of the parties' loan agreements, as amended by their forbearance agreements, Defendants owed $30 million of the principal balance of their loans by June 30, 2009. Defendants' failure to meet that deadline rendered their remaining $9 million term loan immediately due as well. On August 4, 2009, Bank of America formally demanded that Defendants repay the principal and interest due on their loans by August 14, 2009, but Defendants refused to do so. It is undisputed that, to this day, Defendants have failed to repay Bank of America for their loans. As of July 22, 2010, Defendants owed a total of $39 million in principal and $3,141.656.22 in interest, with interest continuing to accrue daily. Given these facts, Bank of America has demonstrated a prima facie case for recovery under the parties' loan agreements, and the burden shifts to Defendants to defeat Bank of America's showing of liability. *See FDIC v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1986).

Unable to contest Bank of America's prima facie case for recovery, the Veluchamys and First Mutual rely entirely on their remaining affirmative defenses: (1) estoppel, and (2) failure to mitigate. These defenses fail for a number of reasons. As an initial matter, Defendants' suggestion that this Court has previously found any merit in these defenses is not only wrong; it is disingenuous. Throughout their responses to Bank of America's motions for summary judgment, Defendants repeatedly berate Bank of America for "rehash[ing] its arguments that Defendants' affirmative defenses should be dismissed as a matter of law, despite the Court's

clear opinion to the contrary," for "efforts to seek *sub silentio* 'reconsideration' of prior rulings" on its motions to dismiss, and for challenging defenses that the Court "specifically allowed . . . to proceed." (Defs.' Br., Dkt. 194, at 2, 8, 11, 13.) As a matter of fact, neither party even mentioned Defendants' mitigation or estoppel defenses in connection with Bank of America's motions to dismiss. The Court did not consider or reject any arguments related to these defenses, and it is not clear what Defendants expect to gain by boldly suggesting otherwise. Contrary to Defendants' arguments, this Court's prior dismissal of Defendants' counterclaims and other affirmative defenses does not represent an endorsement of their remaining defenses.

That said, Defendants' estoppel and mitigation defenses fail for the same reasons that their other affirmative defenses and counterclaims fail: they are barred by the waivers included in the parties' forbearance agreements. In those agreements, Defendants expressly agreed that there are "no offsets, counterclaims or defenses to payment or performance of the obligations" set forth in their loan agreements. (PSOF ¶ 33(c)-(d)). Defendants' waivers are valid and enforceable for the reasons detailed in this Court's earlier opinion dismissing Defendants' other defenses and counterclaims. *See Bank of America v. First Mut. Bancorp. of Ill., Inc.*, No. 09 C 5108, 2010 WL 2653339 (N.D. Ill. Jul. 1, 2010). Just as Defendants' waivers barred their other defenses and counterclaims, they operate to bar Defendants' remaining estoppel and mitigation defenses as well. *See Bank of America v. 108 N. State Retail*, 928 N.E.2d 42, 55-57 (Ill. App. Ct. 2010) (borrowers' affirmative defenses were barred pursuant to their waiver, under which they "represent[ed], warrant[ed], acknowledge[d] and agree[d] that they do not have any defense, set-off, or counterclaim to the payment or performance of any of their obligations under the Loan Documents").

Even if Defendants' estoppel and mitigation defenses were not prohibited by their waivers, they would fail anyway. As predicted throughout the course of this litigation, Defendants cannot meet their burden of proving these defenses due to their refusal to answer any substantive questions about their counterclaims or defenses. Defendants' invocation of the Fifth Amendment dooms each of their defenses in a number of ways. With respect to their estoppel defense, Defendants initially pleaded only that "Plaintiff is estopped to raise its purported claims." (Answer, Dkt. 13, at 7.) Defendants' vague allegation offered Bank of America no indication as to the basis of their defense, and Defendants failed to cure this deficiency when they refused to answer any related questions during the course of discovery.

Defendants' invocation of the Fifth Amendment defeats their estoppel defense on substantive grounds as well. "A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *In re Marriage of Smith*, 806 N.E.2d 727, 730 (Ill. App. Ct. 2004). The party asserting the estoppel defense "must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable." *Id.* at 731. Although unclear from their pleadings, Defendants apparently contend that Bank of America should be estopped from recovering its loans because it knew that Mutual Bank was struggling due to risky lending practices but did not disclose this information to Defendants. Although Defendants' argument fails for many reasons, at bottom, Defendants simply cannot establish that they "had no knowledge or convenient means of knowing the facts" since they refused to answer any questions about what knew—or even what facts support their estoppel defense. *Id.*[3]

---

[3] Apparently attempting to fill the gap left by their invocation of the Fifth Amendment, Defendants have tendered the affidavit of a former Mutual Bank employee, David D. Clark, who states that loan presentations made to the

Defendants' mitigation defense fails for similar reasons. With respect to this affirmative defense, Defendants plead that "Plaintiff failed to mitigate its purported damages, by allowing and encouraging Defendants to take out additional loans from Plaintiff when Plaintiff knew or had reasons to know that the proceeds of these loans were being used to perpetrate a fraud." (Answer, Dkt. 13, at 7.) As with their estoppel defense, Defendants' invocation of the Fifth Amendment renders them unable to satisfy their burden of proof. Defendants contend that, for mitigation purposes, the crucial inquiry is not whether Defendants knew what Bank of America allegedly concealed; rather "it matters when [Bank of America] and Defendants each knew about Mutual Bank's financial decline and management's irregular loans." (Defs.' Br., Dkt. 194, at 11.) Even accepting Defendants' proposition, they still cannot prevail due to their complete refusal to testify about what they knew, let alone when they knew it.[4] Ultimately, Defendants are unable to meet their burden with respect to either their estoppel or mitigation defenses. Accordingly, Plaintiff's motion for summary judgment is granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** December 29, 2010

---

Mutual Bank loan committee and board of directors, including Defendants, "were written in a way that non-bankers would not grasp the underlying problems." (Clark Aff. ¶ 4, Aug. 16, 2010). He states additionally, "[d]uring my investigation and workout efforts I did not see any information that led me to believe that Mr. Veluchamy, his son Arun, or any member of their family was involved in or aware of any of the unusual loan practices employed by Amrish Mahajan and James Regas at Mutual Bank." (*Id.* at ¶ 5.) Clark's affidavit is inadmissible for a number of reasons, not the least of which is his incompetence to testify about what Defendants knew or did not know. Only they can testify as to their own knowledge, and they have failed to do so.

[4] Again, Defendants improperly rely on Clark's affidavit to establish what they knew. As stated above, this approach fails. Clark's testimony simply cannot compensate for Defendants' wholesale refusal to answer any questions about what they knew, or any of the facts underlying their mitigation defense.